UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

OLGA MARGARITA FIGUEROA,

    Plaintiff,

v.                                                                  Case No: 6:16-cv-1561-Orl-TBS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

## ORDER[1]

Plaintiff brings this action pursuant to the Social Security Act ("Act"), as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of Defendant, the Commissioner of the Social Security Administration (the "Commissioner") denying her claims for disability insurance benefits and Supplemental Security Income under the Act. Upon a review of the record and after due consideration, the Commissioner's final decision is **AFFIRMED**.

## Background[2]

Plaintiff filed for benefits on September 3, 2014, alleging an onset date of January 1, 2013 (Tr. 25, 211-218). She claimed that she was disabled due to fibromyalgia, musculoskeletal pain from degenerative disc disease and cervical disc disease, depression and anxiety disorder (Tr. 46, 256, 287).

---

[1] Both parties have consented to the exercise of jurisdiction by a magistrate judge and the matter has been referred in accordance with 28 U.S.C. §636(c) and Fed. R. Civ. P. 73.

[2] The information in this section is taken in large part from the parties' joint memorandum (Doc. 19).

Plaintiff's application was denied initially and on reconsideration, and she requested and received a hearing before an administrative law judge ("ALJ") (Tr. 124, 128, 134, 140, 43-64). In a decision dated March 4, 2016, the ALJ found Plaintiff not disabled through the date of the decision (Tr. 22-42). The Appeals Council denied Plaintiff's request for review on July 6, 2016 (Tr.1-6). Accordingly, the ALJ's March 4, 2016 decision is the final decision of the Commissioner. Having exhausted the available administrative remedies, Plaintiff filed this action for judicial review (Doc. 1). The matter is fully briefed and ripe for resolution.

### The ALJ's Decision

When determining whether an individual is disabled, the ALJ must follow the five-step sequential evaluation process established by the Social Security Administration and set forth in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). Specifically, the ALJ must determine whether the claimant: (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. See Phillips v. Barnhart, 357 F.3d 1232, 1237-1240 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987); Phillips, 357 F.3d at 1241 n.10.

Here, the ALJ performed the required five-step sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her January 1, 2013 alleged disability onset date (Tr. 27). The ALJ found at step two that Plaintiff's severe impairments included degenerative disc disease of the cervical and

lumbar spine, obesity, and fibromyalgia (Tr. 28). He found that other impairments, including depression and anxiety, were not severe impairments (Tr. 28-31). At step three, the ALJ determined that Plaintiff's impairments did not meet or equal any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (Tr. 31). Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), with certain additional limitations. Specifically, the claimant can lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently. She can sit, stand and walk for up to 6 hours each out of an 8-hour workday. She can occasionally climb ladders and scaffolds, and frequently climb ramps or stairs, as well [as] frequently balance, stoop, kneel, crouch or crawl. She can have occasional exposure to extreme cold, extreme heat, vibration, and hazards, such as unprotected heights and moving machinery.

(Tr. 31-32).

At step four, the ALJ determined that Plaintiff was unable to return to her past relevant work as a stock clerk and cashier, but, relying on the testimony from a vocational expert ("VE"), the ALJ found, at step five, that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform (Tr. 35) and, therefore, found Plaintiff not disabled (Tr. 36).

### Standard of Review

The scope of the Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the ALJ's findings are supported by substantial evidence. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004). Findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla but less than a preponderance. It is such relevant evidence that a reasonable person would accept as adequate to support a

conclusion." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted).

When the Commissioner's decision is supported by substantial evidence the district court will affirm even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). The district court "may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" Id. "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (*per curiam*); accord Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (the court must scrutinize the entire record to determine the reasonableness of the factual findings).

### Discussion

Plaintiff urges reversal of the Commissioner's decision, contending that the ALJ failed to weigh the opinions of three treating physicians, failed to mention or weigh the opinions of the consultative mental examiners, and improperly gave great weight to the opinions of non-examining physicians. Plaintiff also claims that the Commissioner's findings regarding her mental impairments are not properly supported.

Evaluation of Medical Opinions

The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons

- 4 -

therefor. Winschel, 631 F.3d at 1178-79 (citing 20 CRF §§ 404.1527(a)(2), 416.927(a)(2); Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987).) When evaluating a physician's opinion, an ALJ considers numerous factors, including whether the physician examined the claimant, whether the physician treated the claimant, the evidence the physician presents to support his or her opinion, whether the physician's opinion is consistent with the record as a whole, and the physician's specialty. See 20 C.F.R. §§ 404.1527(c), 416.927(c).

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician *unless there is good cause to do otherwise*. See Lewis v. Callahan, 125 F.3d 1436 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). Good cause for disregarding an opinion can exist when: (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or is inconsistent with the source's own treatment notes. Lewis, 125 F.3d at 1440.

By contrast, a consultative examiner's opinion is not entitled to the deference normally given a treating source. See 20 C.F.R. § 404.1527(c) (2); Crawford, 363 F.3d at 1161. Nonetheless, all opinions, including those of non-treating state agency or other program examiners or consultants, are to be considered and evaluated by the ALJ. See 20 C.F.R. §§ 404.1527, 416.927, and Winschel.

*Dr. Beltre*

On November 14, 2012, prior to her alleged onset, Plaintiff started seeing Dr. Magdalena Beltre (Tr. 481). On examination, Dr. Beltre noted tenderness in Plaintiff's lower back, upper back, mid central back and over her spine. The doctor diagnosed

Plaintiff with hypothyroidism, essential HTN,³ and lumbago, and referred her to an orthopedist (Id.). On return visit on January 10, 2013, Plaintiff presented with complaints of depression and pain (Tr. 479). On exam, Plaintiff had adequate mood and affect, normal gait, symmetrical power and sensation, and demonstrated a full range of motion. The doctor's assessment was myofascial syndrome (myalgia unspecified) and major depressive disorder. He recommended that Ms. Figueroa see a rheumatologist for further evaluation of her arthralgias (Id.).

On February 21, 2013, Plaintiff saw Dr. Beltre for a regular follow-up. She complained about anxiety and back pain. Dr. Beltre diagnosed HTN, myofascial syndrome and depression/anxiety. Plaintiff's musculoskeletal exam revealed full range of motion, no swelling or tenderness, and her neurological exam showed Plaintiff was fully oriented and had adequate mood and affect, with normal gait, symmetrical power, and sensation (Tr. 478).

On December 12, 2013, Plaintiff returned, complaining of muscle pain and back pain (Tr. 477). Dr. Beltre noted shoulder and lower back tenderness. The doctor diagnosed myofascial syndrome and HTN (Id.).

On January 14, 2014, Dr. Beltre reported to UNUM, Ms. Figueroa's short term and long term disability insurance carrier, that she could perform sedentary work, lifting up to ten pounds occasionally and frequently handling/fingering objects (Tr. 488-491). When asked about Plaintiff's limitations, Dr. Beltre indicated only "no heavy lifting." (Tr. 488).

On a September 24, 2014 visit, Plaintiff complained of swelling of her joints and pain in her back and legs (Tr. 475). She said she could not stay in the same position for

---

³ This is widely understood to be an abbreviation for hypertension.

over 15 minutes. Plaintiff had not been taking her medications because she had no insurance. Dr. Beltre's physical examination showed "WNL" (within normal limits) for all systems examined (Tr. 475). That same date, Dr. Beltre filled out a residual functional capacity questionnaire indicating that Plaintiff suffered from fibromyalgia and HTN (Tr. 483). Symptoms included body aches and anxiety. Dr. Beltre stated that Ms. Figueroa could sit for 20 minutes at a time and stand and walk for 20 minutes at a time. She could sit for a total of one hour in an eight hour workday, and stand/walk not even one hour in an eight hour workday. She would need unscheduled breaks every fifteen to twenty minutes. She could only occasionally lift less than ten pounds. She would miss work more than four times a month (Tr. 483-84).

*Dr. Omeno-Lopez*

On December 8, 2014, Plaintiff presented to Dr. Heidy Ormeno-Lopez at Orlando Family Physicians (Tr. 620). Dr. Ormeno-Lopez diagnosed HTN; fibromyalgia; depression, major, recurrent; joint pain and acute sinusitis. However, on physical examination, Dr. Ormeno-Lopez noted Plaintiff was in no acute distress and, while she noted tenderness in both knees, Dr. Ormeno-Lopez observed no other musculoskeletal or mental problems and Plaintiff had full strength in both upper and lower extremities (Id.). On return visit on December 31, 2014, Plaintiff complained of body aches and neck pain (Tr. 730). She said she had been on medication for chronic conditions (thyroid) until two years ago when she stopped due to insurance issues (Tr. 729). On February 26, 2015, Plaintiff returned and was diagnosed with an acute upper respiratory infection, HTN, and cervical herniated disc, but general examination revealed Plaintiff was in no acute distress and no physical or mental problems were identified (Tr. 725-26).

On March 5, 2015, Dr. Ormeno-Lopez filled out a residual functional capacity

questionnaire regarding Plaintiff (Tr. 656-657). Diagnoses were fibromyalgia, and cervical and lumbar herniated discs. The doctor opined that Plaintiff's prognosis was guarded. Her symptoms included constant muscle pain, back pain, and fatigue. It was felt that Plaintiff could sit for 60 minutes at a time and stand/walk for 20 minutes at a time. She could sit for a total of one hour in an eight hour workday, and stand/walk for not even one hour in an eight hour workday. She would need four extra fifteen minute breaks per day. Plaintiff could never lift, and could only use her hands for 50% of the day for grasping, turning, twisting objects, and fine manipulation (Id.).

Dr. Ormeno-Lopez saw Plaintiff again on April 2, 2015 at which time her diagnoses included only hypothyroidism, benign essential HTN, vitamin D deficiency, and hypertriglyceridemia (Tr. 720-21). The doctor's examination mentioned no musculoskeletal or mental problems and the doctor noted that Plaintiff was in no acute distress and was "feeling well today."

On June 8, 2015, Plaintiff returned, complaining of anxiety, muscle aches, and headache (Tr. 717-18). When Dr. Ormeno-Lopez examined Plaintiff, she identified no musculoskeletal problems other than left thoracic wall tenderness, no psychological problems, and Plaintiff was in no acute distress (Id.). When Dr. Ormeno-Lopez saw Plaintiff in July 2015, her diagnoses included no musculoskeletal problems and her general examination showed Plaintiff was alert and oriented with cognitive function intact (Tr. 715-16).

*Dr. Felix Lopez*

On September 3, 2015, Plaintiff saw Dr. Felix Lopez, also at Orlando Family Physicians (Tr. 710-12). Dr. Lopez diagnosed HTN, fibromyalgia, lumbar herniated disc, cervical herniated disc, and colonic polyp. However, Plaintiff denied any painful or

- 8 -

swollen joints, weakness, depression, or anxiety, and Dr. Lopez' exam revealed only normal findings, including a full range of motion in the neck, no clubbing or swelling in the extremities, normal strength in the all extremities, and cognitive function intact (Id.). When Plaintiff saw Dr. Lopez on September 18, 2015, she denied any painful joints and weakness, and denied depressed mood or anxiety; and his exam again showed normal muscle strength and no musculoskeletal or mental problems (Tr. 707-08).

On October 6, 2015 return visit, Dr. Lopez noted impaired glucose metabolism and abnormal liver enzymes (Tr. 703). He diagnosed impaired glucose metabolism, abnormal liver enzymes, hypothyroidism, multilevel degenerative disc disease, HTN, and cholelithiasis. However, upon examination, Plaintiff denied any painful joints or weakness and denied any depression or anxiety, and Dr. Lopez found Plaintiff in no acute distress, with normal strength in all extremities and no identified psychological issues (Tr. 703-04).

On January 4, 2016, Plaintiff saw Dr. Lopez for follow up (Tr. 814). Depression screening indicated moderately severe depression. The doctor diagnosed HTN, impaired fasting glucose, lumbar radiculopathy, major depression, fibromyalgia, hypothyroidism, and insomnia. Physical examination showed normal strength in all of Plaintiff's extremities (Tr. 815).

On January 21, 2016, Dr. Lopez filled out a physical assessment, giving Plaintiff a diagnosis of advanced degenerative joint disease, cervical radiculopathy, lumbar radiculopathy, hypertension and hyperthyroidism (Tr. 800-02). The doctor opined that Plaintiff's symptoms would frequently interfere with her attention and concentration and that the side effects of her medication included drowsiness. Dr. Lopez stated that Plaintiff could sit for a total of one hour in an eight hour workday, and stand/walk for a total of one hour in an eight hour workday. She could frequently lift less than ten pounds (Tr. 801). Dr.

Lopez opined that Plaintiff would miss work three or four times a month (Tr. 802).

In the administrative decision, the ALJ noted the treatment records of these physicians and weighed their opinions, stating:

> Heidy Ormeno Lopez, M.D., and Felix Lopez, M.D., who treated the claimant during the period at issue, opined that, at the most, the claimant could sit, stand, or walk for no more than an hour in an eight-hour workday, would require frequent unscheduled breaks during an eight-hour workday, can never lift ten pounds, but can frequently lift less than ten pounds. The doctors also opined that the claimant can only use her hands 10% of the time in an eight-hour workday, and would miss up to four days of work a month. (Exhibits 13F and 17F).
>
> Magdelena Beltre, M.D., who treated the claimant during the period at issue, opined that the claimant could perform a very reduced range of sedentary work, never lifting ten pounds, occasionally lifting less than ten pounds, sitting standing, or walking for twenty minutes at a time, sitting for a total of one hour and never standing, or walking in an eight-hour workday. Dr. Beltre also opined that the claimant would require unscheduled 15 minutes breaks every 15 minutes during the workday, and would miss up to four days of work a month. (Exhibits 8F/10, and 9F/10).
>
> The Undersigned gives little weight to Drs. Ormeno, Lopez, and Beltre, since the extreme limitations given in these opinions are not consistent with the objective medical evidence, which shows repeatedly normal physical examinations with only some tenderness findings. Further, Drs. Ormeno, Lopez, and Beltre 's opinions are inconsistent with the claimant's admissions to a normal range of daily activities and social interactions.

(Tr. 34). Plaintiff challenges these findings, contending that "neither of these reasons are valid" as objective medical evidence supports the opinions of limitations and normal findings are not inconsistent with fibromyalgia. I am not persuaded.

As is evident from the treatment records and the records of other examiners and practitioners summarized by the ALJ and the Commissioner, the record does indeed, include "repeatedly normal physical examinations with only some tenderness findings."

(See Doc. 19, pp. 24-25). Although Plaintiff cites to certain test results, notes, and physical therapy findings as support for her contention that "there were objective medical findings that support the doctor's opinions about [her] limitations" (Doc. 19, pp. 18-19), this is, at best, a contention that the record could support a different finding. This is not the standard on review. The issue is not whether a different finding could be supported by substantial evidence, but whether *this* finding is. I find the ALJ's decision to be adequately supported by the substantial evidence he cites.[4]

I am also not persuaded that Plaintiff's diagnosis of fibromyalgia means that the ALJ erred in considering the normal physical examinations. The Eleventh Circuit has recognized that fibromyalgia "often lacks medical or laboratory signs, and is generally diagnosed mostly on an individual's described symptoms," and that the "hallmark" of fibromyalgia is therefore "a lack of objective evidence." Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). But a diagnosis of a condition does not establish that Plaintiff has additional work-related limitations. See Moore, 405 F.3d at 1213 n.6; Harrison v. Comm'r of Soc. Sec., 569 F. App'x 874, 877 (11th Cir. 2014) (noting examinations of claimant with fibromyalgia "were consistently unremarkable" without "the paradigmatic symptoms frequently associated with the most severe cases of fibromyalgia, such as joint swelling, synovitis, or tender trigger points").

---

[4] In addition to the normal physical examinations, the ALJ noted Plaintiff's "normal range of daily activities and social interactions" (Tr. 34). Plaintiff's activities included preparing sandwiches, frozen dinners, and complete meals with several courses; light housework, such as sweeping, moping, light laundry, and cleaning bathrooms; driving and going out alone; shopping for food and household items; independently getting dressed, bathing, caring for her hair, shaving, feeding herself; reading books; watching television; sitting and talking with friends; and going to church (Tr. 29, 271-74, 284, 838). The ALJ is entitled to consider this evidence."[A]n ALJ does not need to give a treating physician's opinion considerable weight if evidence of the claimant's daily activities contradicts the opinion." Jarrett v. Comm'r of Soc. Sec., 422 F. App'x 869, 873 (11th Cir. 2011).

Social Security Ruling ("SSR") 12-2p, cited by the ALJ, discusses what an individual must show to establish her fibromyalgia ("FM") constitutes a medically determinable impairment ("MDI"). See SSR 12-2p, 2012 WL 3104869, at *2-3. The ruling requires evidence of all of the following: (1) a history of widespread pain; (2) at least eleven positive tender points or the repeated manifestation of at least six fibromyalgia symptoms; and (3) evidence that other disorders that could cause the symptoms or signs were excluded. Id. Once it is established that a person has the medically determinable impairment of fibromyalgia, the ruling provides that "we will consider it in the sequential evaluation process to determine whether the person is disabled." Id. at *5.

In evaluating a person's statements about his or her symptoms and functional limitations, the Commissioner follows a two-step process:

> A. *First step of the symptom evaluation process*. There must be medical signs and findings that show the person has an MDI(s) which could reasonably be expected to produce the pain or other symptoms alleged. FM which we determined to be an MDI satisfies the first step of our two-step process for evaluating symptoms.
>
> B. *Second step of the symptom evaluation process*. Once an MDI is established, we then evaluate the intensity and persistence of the person's pain or any other symptoms and determine the extent to which the symptoms limit the person's capacity for work. **If objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms, we consider all of the evidence in the case record, including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms**. As we explain in SSR 96-7p, we will make a finding about the credibility of the person's statements regarding the effects of his or her symptoms on functioning. We will make every reasonable effort to obtain available information that could help us assess the credibility of the person's statements.

Id. (emphasis added). The ruling provides that before an ALJ finds a person with fibromyalgia disabled, the ALJ should "ensure there is sufficient objective evidence to support a finding that the person's impairment(s) so limits the person's functional abilities that it precludes him or her from performing any substantial gainful activity." Id. at *2.

Here, the ALJ acknowledged the diagnosis of fibromyalgia, but did not find it disabling, noting:

> The claimant's overall mobility is also compromised by a history of fibromyalgia, (Exhibit 4F/4), and the claimant has displayed "at least 11 positive tender points on physical examination," (Exhibit 4F/5), as required by Social Security Ruling 12-02p.
>
> However, despite her fibromyalgia and spinal problems, there are some findings of normal range of motion in all major joints, normal strength in all major muscles groups, and normal reflexes throughout, (Exhibits 4F/5, and 7F/3), and even though there are findings of limited range of muscle of the low back and neck, (Exhibit 5F/5, 7,), as well as diminished strength, (Exhibits 12F/2, 3, 7, and 15F/17), the record shows improvement in the range of motion, (Exhibit 5F/3), or only slight diminished range of motion, (Exhibits 12F/2, and 15F), and the diminished strength is only slight, at 4/5, (Exhibits 12F/2, 3, 7, and 15F/l 7). Further, on December 8, 2014, musculoskeletal examination only revealed tenderness, and no other major motion or strength problems. (Exhibit 11F/l).
>
> The undersigned notes that the degree, frequency, and intensity of the impairment's allege[d] are inconsistent with the mostly unremarkable range of the claimant's daily activities.[listing examples]
>
> . . .
>
> In the same manner, the undersigned notes that the degree, frequency, and intensity of the impairments allege are inconsistent with the claimant's normal range of social interactions, since one must expect that an individual with such a degree of debilitating pain would be not well disposed to engage in social interactions [listing examples]. . .

(Tr. 33). Thus, the ALJ found the lack of objective evidence to substantiate the disabling

limitations alleged and then proceeded to evaluate all of the evidence, including Plaintiff's activities, to determine the extent to which the symptoms limited her capacity for work. In doing so, he complied with the requirements of the SSR. As his conclusions are supported by substantial evidence, I see no error.

Plaintiff next contends that the ALJ did not properly consider the opinions of the consultative mental examiners. On December 10, 2014, Plaintiff presented for a psychological consultative examination with Drs. William Austin, Psy.D., and Charles McFall, Psy.D. (Tr. 837-839). Reported "Activities of Daily Living" included:

> Olga rises at 7:00 a.m. and retires at 9:00 p.m. If she is in pain she sleeps until 11:00 a.m. She eats three meals a day. She is able to bathe, groom and feed herself independently on a daily basis. She occasionally needs assistance with dressing. She is able to drive and manage her own funds. She reported that an average day for her consists of doing light chores such as cleaning her room and she watches television. She reported having friends. She attends church.

Mental status examination revealed:

> **She was alert and oriented to person, place, time and purpose of the evaluation.** She was casually dressed in a light jacket, stretch pants, and boots, and demonstrated good basic functioning, grooming and hygiene. **Overall her behavior was cooperative and appropriate.** No gross gait abnormalities were noted; she did not demonstrate any fine motor shakes or tremors. Her speech was logical and coherent and of a normal rate and tone. No errors in articulation were noted. Her primary language is English and English was spoken throughout the interview. **Attention and concentration were within normal limits.** She was able to attend to the evaluator's questions without distractions. She denied any symptoms indicative of psychosis including auditory and visual hallucinations as well as ideas of reference. No flight of ideas or loose associations were noted. She denied thought of self-harm or harm to others. **Her thought process was logical. No gross impairment in memory functioning was noted**. She was able to spell the word "world" forward and backward. She was able to count by 3's to 27. She was able to recall the names of the current and former Presidents of the United States. She

- 14 -

> was able to recall three out of three words immediately and
> three words after a two-minute interval. She could discuss
> details from her recent and remote past. Mood was depressed
> with flat affect. **Her insight, judgment, and impulse control
> were within normal limits at the time of the evaluation**.

(Tr. 838 – emphasis added). Based on her reported symptoms, Drs. Austin and McFall diagnosed Major Depressive Disorder, Moderate, Recurrent; and PTSD. They assigned a GAF score of 53 (Tr. 839). Plaintiff claims that it was error for the ALJ to fail to mention or consider the consultative mental examiner's opinions, including the GAF score. I agree that this examination should have been discussed, but conclude that any error is harmless.

The ALJ discussed Plaintiff's allegations of depression and anxiety at length in his decision (Tr. 29-34). The ALJ determined that Plaintiff had mild limitation in her activities of daily living, mild limitation in social functioning, and mild limitation in concentration, persistence or pace (Tr. 29-30). These findings are not shown to be inconsistent with the mental status examination findings conducted by Drs. Austin and McFall. As such, any error is harmless. See Shaw v. Astrue, 392 F. App'x 684, 687 (11th Cir. 2010) (even if the ALJ erred in failing to mention every finding made by a doctor, such error was harmless where residual functional capacity finding was not inconsistent with doctor's findings); Caldwell v. Barnhart, 261 F. App'x 188, 190 (11th Cir. 2008) (per curiam) ("An ALJ's failure to state with particularity the weight given different medical opinions is reversible error. When, however, an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand.") (citation omitted); Colon v. Colvin, 660 F. App'x 867, 870 (11th Cir. 2016) (per curiam) (holding ALJ's error in not stating weight given to doctor's findings and in not mentioning findings of other doctors was harmless because opinions were

consistent with ALJ's findings and ALJ's discussion did not leave court wondering how ALJ came to his decision.).[5]

Plaintiff's contention that it was an error for the ALJ to give great weight to the opinions of non-examining physicians is also off the mark. Although the Eleventh Circuit has held that "the opinions of non-examining reviewing physicians are entitled to little weight and, taken alone, do not constitute substantial evidence to support an administrative decision," Swindle v. Sullivan, 914 F.2d 222, 226, n.3 (11th Cir. 1990), the opinions of the state agency reviewers here were not "taken alone." The administrative decision reflects that the ALJ considered and relied upon the objective medical treatment records showing normal or mild findings, Plaintiff's reports of normal activities and social interaction, the opinion of her mental health counselor, and the testimony at hearing. Taken together, the ALJ had substantial evidence to support his conclusions.

Step Two finding

Plaintiff contends that the ALJ's findings that her mental impairments were not severe and caused no work related limitations are not supported by substantial evidence. An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 404.1521.[6] An impairment or combination of impairments is "not severe" when

---

[5] The failure to specifically discuss the assignment of a GAF score of 53 by a non-treating provider is not fatal error, as "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision" provided the ALJ's decision is sufficient to enable the Court to conclude that the ALJ properly considered the claimant's condition as a whole. Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (internal quotation omitted). The ALJ thoroughly discussed Plaintiff's allegations of mental limitations here.

[6] Basic work activities include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling, as well as capacities for seeing, hearing, and speaking; understanding, remembering and carrying out simple instructions; responding appropriately to supervisors and fellow employees and dealing with changes in the work setting; and the use of judgment. 20 C.F.R. § 404.1521(b).

medical or other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921.

The claimant has the burden of proof to provide substantial evidence establishing that a physical or mental impairment has more than a minimal effect on her ability to perform basic work activities. An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984). Thus, a "[c]laimant need show only that his impairment is not so slight and its effect not so minimal." McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir.1986). To satisfy the requirements of step two of the sequential evaluation process, the claimant's impairment(s) also must be severe for at least twelve consecutive months. See 20 C.F.R. §§ 416.905(a), 416.909, 416.920(a)(4)(ii); Barnhart v. Walton, 535 U.S. 212, 217 (2002).

In her decision, the ALJ acknowledged that Plaintiff had medically determinable mental impairments of depressive disorder and anxiety but concluded that they "do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere." (Tr. 29). In objecting to this conclusion, Plaintiff cites to the ALJ's "finding" at page "21" of the record, regarding treatment notes from the Health Department at Tr. 368 and 370 (Doc. 19 at 31-32). On review, no such finding appears in the administrative decision; nor has Plaintiff properly characterized the

treatment records she cites.[7] Therefore, this objection is wholly without merit.[8]

On review, I find that the administrative decision was made in accordance with proper legal standards and is supported by substantial evidence.

## Conclusion

Upon consideration of the foregoing:

1. The Commissioner's final decision in this case is **AFFIRMED.**

2. The Clerk is directed to enter judgment accordingly and **CLOSE** the file.

**DONE** and **ORDERED** in Orlando, Florida on October 25, 2017.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to Counsel of Record

---

[7] Tr. 21 is a Social Security Fee Agreement. Tr. 368 and 370 are records from Dr. Raul Tamayo, not the Health Department, which predate the alleged onset of disability and do not purport to address mental health issues. I find no "Health Department" records in the transcript.

[8] Importantly, "the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement at step two." Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987); see also Heatly v. Comm'r of Soc. Sec., 382 F. App'x 823 (11th Cir. 2010). Consistent with the regulations and applicable law, the ALJ credited Plaintiff with another severe impairment at step two and proceeded forward with the sequential evaluation. So, even if Plaintiff's depression should have been included as severe at step two (a finding the Court need not make), the omission is only reversible error if the ALJ subsequently failed to fully account for functional limitations arising from Plaintiff's depression. No such showing made here.